UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

SILVERSIDE SENIOR LIVING, LLC,

    Debtor.

Case No.: 21-44887-lsg
Chapter 11

Hon. Lisa S. Gretchko

---

**AFFIDAIVT OF ANTHONY FISCHER, JR.
IN SUPPORT OF DEBTOR SILVERSIDE SENIOR
LIVING, LLC'S AND GRACEWAY SOUTH HAVEN,
LLC'S CHAPTER 11 PETITIONS AND FIRST DAY MOTION**

Respectfully submitted,

**STROBL SHARP PLLC**

    /s/ Lynn M. Brimer
LYNN M. BRIMER (P43291)
PAMELA S. RITTER (P47886)
300 E. Long Lake Road, Suite 200
Bloomfield Hills, MI 48304-2376
(248) 540-2300; fax (248) 645-2690
Email:    lbrimer@strobllaw.com
              pritter@strobllaw.com
Proposed Attorneys for Debtor and Debtor in Possession

Date: June 10, 2021

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

In re:

| | |
|---|---|
| **SILVERSIDE SENIOR LIVING, LLC,** | Case No. 21-44887<br>Chapter 11, Subchapter V<br>Hon. Lisa Gretcko |
| Debtor. | |

## AFFIDAVIT OF ANTHONY FISCHER, JR.

**STATE OF MICHIGAN** )
                                ) SS
**COUNTY OF OAKLAND** )

Anthony Fischer, Jr., being duly sworn, deposes and says:

1. I am the Chief Executive Officer of Silverside Senior Living, LLC ("Silverside"), which is the sole member of Graceway South Haven, LLC ("Graceway") (collectively, Silverside and Graceway shall be referred to as "Debtors"). I am also the Chief Executive Officer of Graceway. In my capacity as CEO of the Debtors, I am familiar with the day-to-day operations, business affairs, corporate structure and books and records of the Debtors. I am authorized to submit this affidavit (the "Affidavit") on behalf of the Debtors.

2. I make this Affidavit to assist the Court and other parties in understanding the circumstances that compelled the Debtors to file their Chapter 11 proceedings, and to evaluate the Debtors' motion for Joint Administration.

3. The Debtors are managing their assets as a debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4. Except as otherwise indicated, all facts set forth in this Affidavit are based on my personal knowledge, information supplied to me by other employees of the Debtors and/or professionals retained by the Debtors, is information I learned through review of relevant documents, or in my opinion based upon my experience and knowledge of the Debtors operations and financial conditions. If I were called upon to testify, I could and would testify competently to the facts set forth herein.

## **GENERAL BACKGROUND**

5. Debtors commenced their voluntary cases under Chapter 11, Subchapter V, of the Bankruptcy Code on June 7, 2020 (the "Petition Date"). The Debtors are authorized to continue to operate their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6. On June 8, 2021, Charles Mouranie was appointed the Subchapter V Trustee in both of the Debtors' cases.

7. Silverside was originally organized as ACM Senior Living LLC ("ACM") on March 5, 2018 with the intent of establishing it as a holding company for skilled nursing home facilities in Michigan. On February 14, 2019, the name was changed to Silverside Senior Living, LLC. The members of Silverside are as

follows: Airmed Capital Holdings, Inc. (77.0%); SSC Holdings, LLC (10%); Mark Prifogle (10%) and Sajad Zalzala (3%).

8. On September 6, 2018, Graceway was organized in order to acquire the assets and operations of Countryside Nursing and Rehabilitation Community in South Haven, Michigan. Silverside is the sole member of Graceway.

9. On October 31, 2018, Silverside entered into a Lease Agreement (the "Baseline Road Lease") with Chippewa Valley, LLC, an Illinois limited liability company ("Chippewa Valley"), for the property located at 120 Baseline Road, South Haven, Michigan (the "Baseline Road Property"). The Baseline Road Lease had a twelve (12) year term. The initial annual base rent under the Baseline Road Lease was $375,000, with annual increases of 2.5%. Graceway was the approved subtenant of the Baseline Road Lease.

10. In connection with the Baseline Road Lease, Graceway the 93-bed certificate of need (the "CON") associated with the skilled nursing operated at the Baseline Road Property was transferred from the prior tenant and operator, Atrium Centers, Inc. ("Atrium") to Graceway. Atrium had experienced low census numbers and was unable to meet its operating expenses and had been unable to pay rent to Chippewa for the prior two (2) years.

11. On January 1, 2019, Graceway began operating the facility under a management agreement with Atrium. On February 1, 2020, all operations and control were turned over the Graceway.

12. Despite a marketing campaign and focused efforts to attract new residents, Graceway continued to experience low census numbers consistent with Atrium's prior experience. By mid to late 2019, the census numbers began to improve, and it was anticipated that during 2020, the facility would become cash positive and begin to post profits.

13. However, in order to get to the point of profitability, Graceway incurred significant debt. Recognizing the positive trend in census numbers and revenue generation, Chippewa agreed to enter into a revolving line of credit with the Debtors in order to provide needed bridge funding.

14. On March 23, 2020, the Debtors entered into a Credit Agreement with Chippewa for a revolving line of credit based on a borrowing base formula with an initial credit limit of $500,000 (the "Line of Credit") and a maturity date of March 22, 2021. It was guaranteed by Airmed Capital Management, LLC, Nicolas Guibert de Bruet and me.

15. The Credit Agreement required the Debtors to establish a lockbox account with Fifth Third Bank for the deposit of the Graceway receivables. On April 10, 2020, Silverside and Graceway each entered into a Deposit Account

Control Agreement (DACA) with Fifth Third, thereby effectively surrendering control over the Debtors' receipts to Chippewa.

16. Graceway's sole source of income is the operation of the skilled nursing home and the accounts receivable it generates, all of which are deposited into the Fifth Third DACA account. Silverside has no separate source of income.

17. As receivables were collected and deposited into the Debtors' Fifth Third deposit account, Chippewa swept the account and advanced new funds under the Line of Credit to the Debtors. Consequently, once the Line of Credit was in place, all cash disbursements were made with funds advanced by Chippewa.

18. COVID-19 had a devastating impact on Graceway's operations and ability to generate and collect receivables. In August 2020, Graceway received a Paycheck Protection Program loan through Fifth Third in the in the amount of $497,425.00 (the "PPP Loan"). The PPP Loan funds aided Graceway in meeting its payroll obligations and freed other funds to keep the facility functioning during the pandemic. The PPP Loan has been fully forgiven by the Small Business Administration ("SBA").

19. In order to avoid litigation regarding its account, on February 22, 2020, Silverside entered a Cognovit Note with Concept Rehab, Inc., an in-house therapy management program providing services to the Graceway residents (the "Cognovit Note").

20. The Cognovit Note required monthly payments of $100,216.47 beginning on March 20, 2020.

21. The Debtors were able to make some partial payments under the Cognovit Note.

22. However, due to COVID-19, the Debtors could not meet all of the obligations under the Cognovit Note and on April 29, 2020, Silverside entered into a Forbearance Agreement with Concept Rehab (the "Forbearance Agreement"). At the time, the balance due to Concept Rehab was $553,605.18.

23. The Forbearance Agreement required bi-weekly payments of $25,000.00. Although the Debtors were able to make some initial payments under the Forbearance Agreement, by October they could no longer continue to pay Concept Rehab. The parties entered into a Second Forbearance Agreement requiring monthly payments of $17,471.46.

24. As the pandemic dragged on through the close of 2020 and into 2021, Graceway began experiencing more severe cash shortages. Additional funds were loaned to Graceway from Silverside's investors and Chippewa agreed to increase the credit limit under the Line of Credit to $700,000.

25. Graceway also applied for and was granted a second Payroll Protection Program loan on March 10, 2021 also in the amount of $497,425.00 (the "Second PPP Loan").

26. The second Payroll Protection Program provided much-needed funding to meet residents needs and relief for the Debtors to continue operations for the next several months despite the decreasing availability for cash on the Line of Credit.

27. On March 13, 2021, Chippewa issued a notice to the Debtors indicating that it would no longer extend credit under the line of credit, refusing to renew or extend the maturity date beyond March 22, 2021.

28. This severely limited the Debtors' access to cash to meet Graceway's operating expenses.

29. On May 27, 2021, due to the Debtors' lack of cash flow and inability to meet payroll, the State of Michigan issued a Notice of Summary Suspension of Payment and Participation, suspending Graceway's ability to participate in Medicaid programs with the State of Michigan.

30. Consequently, all residents have been moved to alternative skilled nursing facilities and the Graceway facility has been shut down.

## **CURRENT EMPLOYEES AND MANAGEMENT TEAM**

31. Silverside has not maintained a labor force. I have provided all management services needed by Silverside.

32. Historically, Graceway has maintained a labor force of up to 68 employees, including nursing staff, administrative staff, housekeeping and

janitorial staff. In addition, Graceway has employed a medical director and a director of nursing to oversee the care of the residents.

33. Currently, Graceway has no residents and therefore no longer requires any employees.

34. Chippewa, and its investor, Omega Healthcare Investors, Inc (collectively, "Omega"), have assumed control of the Baseline Road Property. Jonathan Veniar of Veniar Real Estate Enterprises is currently managing the Baseline Road Property for Omega.

35. Consequently, the Debtors do not require any employees to manage or oversee the physical facility.

## THE PREPETITION SECURED CLAIMS

36. As of the Petition Date, the Line of Credit due to Chippewa has been paid in full.

37. Graceway's only remaining secured debt is an approximate $14,000 balance due to High Speed Capital, LLC in connection with an equipment lease.

38. On March 24, 2020 and April 3, 2020, Chippewa filed a UCC-1 Financing Statement against Graceway in connection with its guaranty of the Line of Credit. The Line of Credit has been paid in full and therefore Chippewa does not have a secured claim in Graceway's collateral.

39. On January 16, 2019, as Graceway was assuming control of the operations, Silverside entered into a secured term loan with HealthTeq Services, LLC ("HealthTeq") in order to provide operating capital to Graceway. HealthTeq recorded its UCC-1 Financing Statement against Silverside on February 4, 2019. The balance due to HealthTeq is $459.415.04.

40. On October 31, 2018, in connection with the Baseline Road Lease, Silverside entered into a Pledge Agreement with Chippewa, pledging its equity interest in Graceway to Chippewa On February 5, 2019, Chippewa filed a UCC-1 Financing Statement against Silverside, with the collateral description limited to Silverside's interest in Graceway. Chippewa did not exercise any of its rights under the Pledge Agreement with respect Silverside's equity position in Graceway prior the Petition Date.

41. In connection with the Line of Credit, Silverside entered into a Security Agreement with Chippewa. Chippewa filed a UCC-1 Financing Statement against ACM on March 24, 2020 to secure the Line of Credit.

42. Chippewa's secured interest with respect to both of its UCC-1 filings against Silverside are junior to HealthTeq's security interest. Moreover, Chippewa has been paid in full on the Line of Credit and no longer has a security interest against Silverside.

## DEBTORS' PREPETITION ASSETS

43. As of the Petition Date, Silverside's sole asset was its membership interest in Graceway. Due to Graceway's liabilities, there is any equity in Silverside's membership interest in Graceway.

44. As of the Petition Date, Graceway's assets were chiefly made up of (1) earned accounts receivable; (2) furniture and fixtures used in the operation of the skilled nursing facility; (3) the potential employee retention credit available from the federal government; and (4) the value of its 93-bed CON. The Debtors estimate the fair market value of Graceway's assets on the Petition Date are as follows:

|    |                                 |              |
|----|---------------------------------|--------------|
| i. | Collectable Accounts Receivable: | $ 300,383.00 |
| ii. | Personal Property:             | $ 25,000.00  |
| iii.| Employee Retention Credit     | $ 200,000.00 |
| iv. | CON:                          | $ unknown    |
|    |                                 | $ unknown    |

## DEBTORS' POST PETITION FUNCTIONS/OPERATIONS

45. The Debtors determined that a Chapter 11, Subchapter V bankruptcy filing was appropriate for a number of reasons.

46. Due to the onset of COVID-19, in early 2020, the Debtors were not able to complete the 2019 year-end accounting. Cash flow would not allow for the retention of outside accountants to assist with the auditing of the books and the preparation of the tax returns.

47. Cash flow concerns were even more critical in early 2021 and therefore the 2020 year-end accounting has also not been completed.

48. The Debtors propose to immediately address accounting deficiencies by retaining the accounting firm of Cole, Newton and Duran who is prepared to immediately complete the year-end accountings and to prepare the 2021 records. As soon as the accounting is completed, the tax returns will be finalized and filed.

49. The Debtors believe all employment tax returns have been filed and all related liabilities have been paid. The Debtors are flow through entities and therefore the tax returns to be completed by the accounting firm will not generate an unpaid tax liability.

50. In addition, the Second PPP Loan is fully eligible for SBA forgiveness. Now that there are no ongoing operational issues to address, I will complete the online forgiveness application and work with Fifth Third and the accounting firm to ensure that the Second PPP Loan is fully forgiven.

51. Moreover, the Debtors will prepare and submit the application for the employee retention credit.

52. Graceway is in the process of interviewing and selecting a billing processor prepared to assist the Debtors on a contingent fee arrangement to complete any open billing, audit the accounts receivable and resolve any billing that has been rejected and is eligible for resubmission.

53. Furthermore, during the 90 days prior to the Petition Date, Graceway was compelled to pay a number of creditors who threatened to discontinue supplying goods and services. This depleted Graceway's cash flow and impaired its ability to make its final payroll. Graceway will pursue the preferences that the bankruptcy filing has triggered and will redistribute funds pursuant to the bankruptcy priority rules, including paying the appropriate wage claims of the priority creditors.

54. Finally, the Debtors are in the best position to facilitate the sale of the CON. I will be able to assist in marketing efforts and will work with Chippewa's management company to transition the real estate to a new operator.

55. In the absence of the bankruptcy filing, the Debtors could not terminate the impact of the DACA and assume control of its funds needed to retain an accounting firm to complete their accounting and tax returns and to pay the priority wage claims.

If sworn, Affiant can testify competently to the facts set forth herein.

Pursuant to 28 USC § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

**FURTHER DEPONENT SAYETH NOT.**

___See attached_____<br>
Anthony Fischer, Jr.<br>
Chief Executive Officer

_____
Anthony Fischer, Jr.
Chief Executive Officer

*S&B\85370\002\PLDG\SB749553.DOC