UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re

SILVERSIDE SENIOR LIVING, LLC, et al.,[1]

Debtors.

Case No. 21-44887

Chapter 11
Hon. Lisa S. Gretchko
Jointly Administered

---

**PROPOSED ORDER CONFIRMING DEBTORS'
SECOND AMENDED PLAN OF LIQUIDATION UNDER 11 U.S.C. 1191(b)**

The Debtors and Debtors-in-Possession Silverside Senior Living, LLC, ("Silverside"), and Graceway South Haven, LLC ("Graceway") (collectively, the "Debtors"), submit the following as their Proposed Order Confirming Debtors' Second Amended Plan of Liquidation Under 11 U.S.C. 1191(b).

---

[1] The Debtors in these jointly administered proceedings along with the last four digits of their respective federal tax id numbers are Silverside Senior Living, LLC (2357) [Case No. 21-44887-lsg] and Graceway South Haven, LLC (9393) [Case No. 21-44888-lsg].

**STROBL PLLC**

/s/ Lynn M. Brimer
LYNN M. BRIMER (P43291)
PAMELA S. RITTER (P47886)
ANTHONY M. CIMINI (P86223)
33 Bloomfield Hills Parkway, Ste 125
Bloomfield Hills, MI 48304
(248) 540-2300; fax (248) 645-2690
lbrimer@strobllaw.com
pritter@strobllaw.com
acimini@strobllaw.com
Attorneys for Debtors and
Debtors-in-Possession

Dated: February 10, 2023

*S&B\85370\002\BANKRUPT\SB811619.DOCX

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

**SILVERSIDE SENIOR LIVING, LLC, et al.,**[1]

Debtors.

Case No. 21-44887
Chapter 11
Hon. Lisa S. Gretchko

Jointly Administered

## ORDER CONFIRMING DEBTORS' SECOND AMENDED PLAN OF LIQUIDATION UNDER 11 U.S.C. 1191(b)

Silverside Senior Living, LLC ("Silverside") and Graceway South Haven, LLC ("Graceway") (collectively, the "Debtors"), as Debtors, by and through their attorneys, Strobl Sharp PLLC, having filed *Debtors' Second Amended Plan of Liquidation* (the "Plan") [ECF No. 300], proper notice of the Plan having been served; the Court having held a hearing on confirmation of the Plan on December 2, 2022 and February 17, 2023; and the court being otherwise fully and duly advised in the premises:

---

[1] The Debtors in these jointly administered proceedings along with the last four digits of their respective federal tax id numbers are Silverside Senior Living, LLC (2357) [Case No. 21-44887-lsg] and Graceway South Haven, LLC (9393) [Case No. 21-44888-lsg].

**NOW, THEREFORE**, the Court hereby makes the following findings of fact and orders as follows:

## FINDINGS OF FACT

1. The Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334, the United States District Court's general order of reference, and other various applicable provisions of the Bankruptcy Code[2] and the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

2. Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409.

3. Adequate and sufficient notice of the Plan and the confirmation hearing, along with all deadlines for voting on or filing objections to the Plan, has been given to all known holders of claims and interests. [*Order Establishing Deadlines and Procedures*, ECF No. 58, as amended by *Order Amending Order Establishing Deadlines and Procedures in the Case of a Small Business Debtor Who Has Elected to Have Subchapter V of Chapter 11 Apply and Extending Deadline to Serve the Second Amended Plan and Ballots*, ECF No. 301; *Debtors' Second Amended Plan of Liquidation*, ECF No. 300; *Certificate of Service of Plan*, ECF No. 305]. The Plan was transmitted and served in compliance with the Bankruptcy Rules and orders of the Court and such transmittals and service were adequate and sufficient. Notice

---

[2] The term "Bankruptcy Code" refers to the applicable section(s) of 11 U.S.C. § 101, *et. seq.* unless otherwise indicated.

of the confirmation hearing, the opportunity for any party in interest to object to confirmation and all dates were adequate and appropriate and in accordance with Bankruptcy Rule 2002(b) as to all parties to be affected by the Plan and the transactions contemplated thereby. No other or further notice is required.

4. The *Verified Ballot Summary Re*port pertaining to the Plan [ECF No. 318] was filed with the Court on November 28, 2022.

5. Group I consists of the administrative claims of the Debtors' estate and the Debtors' professionals and the professionals appointed in this case, including the Debtors' counsel, the Debtors' accountant, the Debtors' special healthcare counsel, the Patient Care Ombudsman, and the Subchapter V Trustee.

6. Group II consists of prepetition priority wage claims of the Debtors' former employees earned in the 180 days prior to the Petition Date.[3] Group II has voted to reject the Plan.

7. Class I consists of the secured claim of McKesson Medical-Surgical Minnesota Supply, Inc. ("McKesson"). McKesson filed a secured proof of claim in the amount of $51,709.52 (Claim No. 26-1) (the "McKesson Claim"). The Class I creditor did not vote in connection with the Plan.

---

[3] Capitalized terms not otherwise defined herein shall have the meaning given to them in the Plan.

8. Class II consists of the secured claim of High Speed Capital, LLC. The Class II creditor did not vote in connection with the Plan.

9. Class III consists of the secured claim of Chippewa Valley, LLC. The Class III creditor initially voted to reject the Plan but, based upon revisions to the Plan set forth in this Confirmation Order, the Class III creditor submitted a ballot voting in favor of the Plan. In addition, Chippewa filed a *Limited Objection and Reservation of Rights to Debtors First (sic.) amended Plan of Liquidation* [ECF No. 309] with respect to the Plan, which objection was withdrawn prior to the confirmation hearing.

10. Class IV consists of the priority tax claims of the Internal Revenue Service, the State of Michigan, Department of Treasury, the State of Michigan, Unemployment Insurance Agency and the State of Michigan, Department of Health and Human Services. The Department of Health and Human Services initially voted to reject the Plan. Based upon the revisions to the Plan set forth in this Confirmation Order, the Department of Health and Human Services has agreed to change its ballot from rejecting to accepting in favor of the Plan. All other Class IV creditors did not vote in connection with the Plan. The United States, on behalf of the Internal Revenue Service, the Department of Health and Human Services, and the Department of Labor filed an *Objection to Debtors' Second Amended Plan of*

4

*Liquidation.* Based upon the revisions to the Plan set forth in this Confirmation Order, the Objection has been resolved.

11. Class V consists of the pre-petition general unsecured non-priority claims against the Debtors, including the unsecured claim of Fifth Third Bank, National Association (Fifth Third), for the unforgiven Paycheck Protection Program ("PPP") loans. Class V has voted to reject the Plan. The treatment of the Class V creditors as set forth in the Plan meets the requirements of 11 U.S.C. §§ 1129(a) and 1191(b).

12. Class VI consists of the claims of Debtors' Insiders, including the Insiders claims for debt and in connection with the Insiders' equity interests. However, the Class VI interest holder is deemed to have rejected the Plan pursuant to 11 U.S.C. § 1126(g).

13. The Plan adequately and properly identifies and classifies all claims. Pursuant to 11 U.S.C § 1122(a), the claims placed in each class are substantially similar to the other claims in each such class. Pursuant to 11 U.S.C § 1123(a)(1), valid legal and business reasons exist for the various classes of claims created under the Plan and such classifications do not unfairly discriminate among the holders of claims. The classification of claims in the Plan is reasonable.

14. Pursuant to 11 U.S.C § 1123(a)(2), the Plan properly specifies all classes of claims or interests that are not impaired under the Plan.

5

15. Pursuant to 11 U.S.C § 1123(a)(3), the Plan properly specifies all classes of claims or interests that are impaired under the Plan.

16. Pursuant to 11 U.S.C § 1123(a)(4), the Plan provides for the same treatment of claims or interests in each respective class unless the holder of a particular claim or interest has agreed to a less favorable treatment of such claim or interest.

17. The Plan complies with all applicable provisions of Chapter 11 of the United States Bankruptcy Code.

18. The Plan has been proposed in good faith and neither the Plan, nor the means by which it was proposed, are forbidden by any law.

19. All payments to be made or promised by the Debtors have been disclosed to the Court and are reasonable.

20. On November 18, 2022, the Court entered a *Stipulated Order For the Removal of the Debtors as Debtors-in-Possession under 11 U.S.C § 1185(a)* for cause [ECF No. 314].

21. The Graceway PPP loans have not been forgiven by Fifth Third or the Small Business Administration ("SBA").

22. The Plan does not unfairly discriminate against any class of creditors.

23. No regulatory commission has any jurisdiction over this matter.

24. Each holder of a claim or interest in each Group or Class will receive or retain under the Plan as of the Effective Date of the Plan not less than the amount the holder would receive if the Debtors had filed a liquidation under Chapter 7 of the Bankruptcy Code.

25. The Plan complies with the applicable provisions of 11 U.S.C. §§ 1129(a) and (b) and 1191(b).

26. The Plan provides that holders of priority claims will receive either cash equal to the allowed amount of such claims or deferred cash payments equal to the allowed amounts of such claims, to the extent funds are available to satisfy such requirements. To the extent that such claims are treated otherwise, the holders of such claims have accepted the Plan.

27. Given the complexities and issues raised by the accounting in this case, the agreed upon carveout for the Debtors' accountants in the amount of $38,630.00 and for the Debtors' counsel in the amount of $38,630.00 from the proceeds of the ERC Claims to be applied against approved fees of such professionals is appropriate.

28. Given the complexities and issues raised by the collection on the Debtors' accounts receivable, the agreed upon surcharge in the amount of $29,592.17 to Debtors' bankruptcy counsel from the proceeds of Debtors' accounts receivable allocable to Chippewa to be applied against approved fees of Debtors' bankruptcy counsel is appropriate.

7

29. In light of the services provided by Debtors' bankruptcy counsel in pursuing preference claims, the agreed upon carveout in the amount of $22,737.96 from the proceeds of Preference Recoveries to be applied against approved fees of Debtors' bankruptcy counsel is appropriate.

30. The Court finds that the Plan does not discriminate unfairly, is feasible, and equitable with respect to each class of claims or interests that is impaired under, and has not accepted, the Plan.

31. It is appropriate to waive the discharge under 11 U.S.C. § 1192.

**NOW, THEREFORE**, upon application of the Debtors:

**IT IS ORDERED** that the Plan, as modified herein, is confirmed under 11 U.S.C. § 1191(b).

**IT IS FURTHER ORDERED** that, pursuant to 11 U.S.C. § 1141(a), except as provided in 11 U.S.C. § 1141(d)(2) and (3), the provisions of the Plan as modified herein, as of the Effective Date, shall bind the Debtors, any Creditor, and Debtors' equity security holders, whether or not the claim of such interest or creditor is impaired under the Plan and whether such creditor or interest holder has accepted the Plan.

**IT IS FURTHER ORDERED** that all of the Debtors' prepetition executory contracts and unexpired leases that have not been previously specifically rejected are hereby rejected as of the Confirmation Date pursuant to the terms and conditions

of the Plan and 11 U.S.C. §§ 1123(b)(2) and 365 and any applicable Bankruptcy Rules.

**IT IS FURTHER ORDERED** that the Debtors shall not receive a discharge as a consequence of the confirmation of the Plan.

**IT IS FURTHER ORDERED** that Article VII of the Plan shall constitute a written waiver of discharge and the Debtors' discharge shall be deemed waived pursuant to 11 U.S.C. § 1192.

**IT IS FURTHER ORDERED** that upon the failure of the Debtors to make any payments due on any administrative, secured, priority, or general unsecured claim of the Internal Revenue Service required under this Plan, or to file any return which comes due after the Confirmation Date, which failure is not cured within 30 days of the mailing of a written notice of default by the Internal Revenue Service, the Internal Revenue Service may exercise all rights and remedies applicable under non-bankruptcy law for the collection of its entire claim and/or seek appropriate relief from this Court. In the event of conversion to a Chapter 7 proceeding, all property of the Debtors, the Debtors in Possession, if any, and the liquidating Debtors, which will revest upon confirmation of the Plan and all of the Debtors' after acquired property shall be property of the Chapter 7 Estate. No funds distributed to a creditor prior to the entry of an order converting this case to a Chapter 7 proceeding shall become assets of the Chapter 7 Estate.

9

**IT IS FURTHER ORDERED** that the final paragraph of section 1.5.3 of the Plan is modified to provide as follows: "In addition, the Health Resources & Services Administration ("HRSA") filed a proof of claim in the amount of $578,806.68 [Claim No. 29] based on Provider Relief Funds ("PRF") received by Graceway. The claim is based on the reported failure of Graceway to timely complete all reporting requirements with respect to the PRF it has received. Graceway has completed all required reports due in connection with the PRF funds it has received. The reports remain subject to audit by HRSA. On October 14, 2022, the HRSA claim was amended to reflect a balance due of $0.02 [Claim No. 29-2]. HRSA is an HHS agency but is not a part of CMS or Medicare."

**IT IS FURTHER ORDERED** that the first paragraph of section 1.5.3 of the Plan is modified to provide as follows: "Varipro submitted substantial claims to Medicare totaling approximately $1,156,849.26 (the "Medicare Claims"). However, the Center for Medicare Services ("CMS") was not able to process the Medicare Claims due to deficient coding. Graceway was unable to correct the coding deficiencies and no longer has access to the billing software. Consequently, the Medicare Claims are no longer collectable."

**IT IS FURTHER ORDERED** that the priority portion of the Department of Labor claims [Claim no. 25 and Claim No. 27-2] in the total amount of $13,485.07,

representing unmitted contributions to employee benefit plans, shall be treated as a Group II claim and shall be paid in full through a carveout from the Initial ERC.

**IT IS FURTHER ORDERED** that the final paragraph of section 1.5.4 of the Plan is modified to provide as follows: "The Debtor has reached a settlement with the Internal Revenue Service and Chippewa regarding the treatment of the ERC Claims. Specifically, the Internal Revenue Service and Chippewa have agreed that the ERC refund claims for the 4th quarter 2020 and 1st quarter 2021 (the "Initial ERC") will be deemed to be prepetition assets and the ERC refund claim for the 2nd quarter 2021 (the "Second ERC Claim") (collectively, the Initial ERC and the Second ERC Claim shall be referred to as the "ERC Claims") will be deemed to be a post-petition asset. The full settlement regarding treatment of the ERC Claims is set forth below in paragraphs 1.10.1 and 1.10.2."

**IT IS FURTHER ORDERED** that section 1.10.2 of the Plan shall be modified to provide as follows: "The Debtors have reached an agreement with Chippewa regarding its distribution from the Debtors' estates under this Plan, which settlement is contingent upon confirmation of the Plan. Chippewa has agreed to accept a total distribution in the amount of $300,000.00 in cash (the "Chippewa Settlement Amount") in satisfaction of its secured and administrative claims against the Debtors' estates, which will be paid in full in cash by the Debtors within 21 days of receipt of the proceeds of the ERC Claims ("ERC Funds"). Chippewa has further

11

21-44887-lsg    Doc 331    Filed 02/10/23    Entered 02/10/23 15:17:39    Page 13 of 19

agreed to waive any claim it may have to the Initial ERC Claim and that the Initial ERC Claim will be deemed to be a prepetition asset of the Graceway estate subject to the IRS offset rights. The IRS and the Debtors have agreed that the Second ERC Claim is a post-petition asset of the Graceway estate subject to Chippewa's post-petition security interest. Within 30 days of the Confirmation Date, the IRS will distribute to the Debtors' estate the following amounts: (i) the Wage Carveout in the amount of $93,171,07; (ii) the DOL priority claim in the amount of $13,485.07; (iii) the IRS Administrative Carveout in the amount of $157,279.56; and (iv) the Second ERC Claim in the amount of $156,947.58.

**IT IS FURTHER ORDERED** that the IRS Administrative Carveout shall be one-third (33%) of the Initial ERC in the amount of $157,279.56.

**IT IS FURTHER ORDERED** that McKesson's Class I claim shall be paid in full in the amount of $51,709.52 from the proceeds of Graceway accounts receivable. The distribution to McKesson is subject to reduction in the event the Debtors' counsel is granted a surcharge against the proceeds of the Graceway accounts receivable. Debtors' counsel shall have fourteen (14) days from the Confirmation Date to file a motion seeking a surcharge against the proceeds of the Graceway accounts receivable.

**IT IS FURTHER ORDERED** that High Speed's Class II claim shall be paid in full in the amount of $14,000.00 from the proceeds of Graceway accounts

receivable. The distribution to High Speed is subject to reduction in the event the Debtors' counsel is granted a surcharge against the proceeds of the Graceway accounts receivable. Debtors' counsel shall file fourteen (14) days from the Confirmation Date to file a motion seeking a surcharge against the proceeds of the Graceway accounts receivable.

**IT IS FURTHER ORDERED** that Chippewa's Class III claim, along with its administrative claim, shall receive, within 21 days of receipt of the ERC Funds, a distribution in the total amount of $300,000.00, in cash, from (i) the proceeds of the Graceway accounts receivable, (ii) the Second ERC Claim, and (iii) the funds available for distribution to holders of administrative claims. Chippewa's distribution shall be made pursuant to the provisions of this Order as set forth below.

**IT IS FURTHER ORDERED** that the claim of Fifth Third in connection with the Debtors' PPP loan shall be treated as a general unsecured Class V Claim.

**IT IS FURTHER ORDERED** that paragraph 10.20 of the Plan shall be modified to provide as follows: "Disbursing Agent" shall mean Charles Mouranie. If, at any point, Charles Mouranie is unable to serve, then a new Disbursing Agent shall be selected.

**IT IS FURTHER ORDERED** that paragraph 10.21 of the Plan shall be modified to provide as follows: "Effective Date" shall mean the later to occur of:

(i) the sixtieth (60th) business day after the Confirmation Order becomes a Final Order, or (ii) payment in full, in cash, of the Chippewa Settlement Amount."

**IT IS FURTHER ORDERED** that the Disbursing Agent shall segregate $10,000.00 to pay for the winddown expenses which shall include the fees of the Disbursing Agent to issue disbursements and prepare any appropriate Forms 1099 associated with such disbursements. In addition, the Disbursing Agent shall maintain and reconcile the checking account, provide Debtors' counsel with information regarding distributions and assist in the preparation of the quarterly reports of distributions to be filed with the Court, pay the post-confirmation fees of counsel to prepare the final report of disbursements and any necessary post-confirmation monthly reports, and the post-confirmation fees of the accountants to complete any required tax returns.

**IT IS FURTHER ORDERED** that in the event Mr. Anthony Fischer fails to turn over any funds he has withdrawn from the Debtor in Possession Bank Account ("Bank Account") subsequent to the commencement of these bankruptcy cases or does not reach an agreement with the Debtors regarding the withdrawn funds from the Bank Account (collectively, the "Fischer Withdrawals"), Debtors' counsel, at the direction of the Disbursing Agent, may file a Motion for Turnover.

14

21-44887-lsg    Doc 331    Filed 02/10/23    Entered 02/10/23 15:17:39    Page 16 of 19

**IT IS FURTHER ORDERED** that $10,757.60 of the Wage Carveout, representing Anthony Fischer's pre-petition Wages shall be credited to the Fischer Withdrawals and applied to Administrative Expenses.

**IT IS FURTHER ORDERED** that in the event funds are recovered by the Liquidating Debtors in excess of the amounts disclosed in the Plan, either through the filing of a motion to compel turnover or otherwise, the Disbursing Agent shall disburse such funds upon receipt, first to the Group I Administrative Claims on a pro-rata basis and then to the Class IV creditors on a pro-rata basis.

**IT IS FURTHER ORDERED** that the Disbursing Agent shall make no disbursements until the ERC Funds from the Initial ERC and Second ERC are received by the Debtors' estate, then the Disbursing Agent shall issue one disbursement to each of the Group I, Group II, Class I, Class II and Class III creditors within 21 days of receipt of the ERC Funds. In the event additional funds are recovered by the Liquidating Debtors after the receipt of the ERC Funds, the Disbursing Agent shall distribute such funds as set forth in this Order in one payment to each creditor entitled to receive such funds within 21 days of receipt. All disbursements shall be made within three (3) years of confirmation.

**IT IS FURTHER ORDERED** that the failure of this Order to reference or address all or part of any particular provision of the Plan has no effect on the validity, binding effect or enforceability of such provision and such provision has the same

15

validity, binding effect and enforceability as every other provision in the Plan. In the event of any inconsistencies between the terms of the Plan and this Confirmation Order, the terms of this Confirmation Order shall control.

**IT IS FURTHER ORDERED** that the Disbursing Agent shall satisfy the fee due to the billing company, Varipro, prior to making any distribution from the accounts receivable collected by Varipro.

**IT IS FURTHER ORDERED** that the agreed upon carveout in favor of Debtors' accountants, Cole Newton & Durant CPAs, in the amount of $38,630.00 from the proceeds of the Initial ERC and Second ERC distributed to the Debtors' estates, is approved. In the event the Cole Newton & Durant CPAs' fees are approved by the Court in an amount less than $38,630.00, the carveout under this paragraph will be reduced to the amount of such approved fees and any unused funds shall be redistributed to the remaining Group I creditors on a pro rata basis and then to the Class V creditors on a pro rata basis.

**IT IS FURTHER ORDERED** that the agreed upon carveout in favor of Debtors' bankruptcy counsel, Strobl PLLC, in the amount of $29,592.17 against the proceeds of the Debtors' accounts receivable to be distributed to Chippewa and the agreed upon carveout in the amount of $22,737.96 from the Preference Recoveries and in the amount of $38,630.00 from the proceeds of the Initial ERC and the Second ERC distributed to the Debtors' estates, is approved. In the event the Strobl PLLC

fees are approved by the Court in an amount less than $90,960.13, the carveouts under this paragraph will be reduced to the amount of such approved fees and any unused funds shall be redistributed to the remaining Group I creditors on a pro rata basis and then to the Class V creditors on a pro rata basis.

**IT IS FURTHER ORDERED** that the Debtors shall file, in accordance with 11 U.S.C. §§ 1106(a)(1) and 1107 and Fed. R. Bankr. P. 2015(a), post-confirmation monthly operating reports no later than twenty (20) days subsequent to the end of each month and serve copies on the United States Trustee and the Subchapter V Trustee, until the Court enters an Order closing, dismissing or converting the case.

**IT IS FURTHER ORDERED** that all professional fee applications shall be filed within thirty (30) days of the Confirmation Date.